**NORTHWEST AIRLINES, INC.,**
**Plaintiff,**

**v.**

**AIRLINE PILOTS ASSOCIATION, INTERNATIONAL, AFL–CIO, and its Local Council No. 1, et al., Defendants.**

**No. 4–60–Civ.–180.**

United States District Court
D. Minnesota,
Fourth Division.
July 20, 1960.

Henry Halladay, Minneapolis, Minn., for plaintiff.

Leonard Lindquist, Minneapolis, Minn., and Henry Weiss, New York City, for defendant Airline Pilots Association.

Solly Robins, St. Paul, Minn., for defendant Flight Engineers.

DEVITT, Chief Judge.

Northwest Airlines, Inc., operating as a common carrier in interstate and foreign commerce, seeks a preliminary injunction against the defendants, who represent its airline pilots and flight engineers. The requested injunction would

prohibit a threatened strike by the pilots and flight engineers over the apparent issue of the crew complement to be employed on the recently inaugurated flights of pure jet aircraft.

On July 9, 1960, the Court signed a restraining order which had the effect of requiring the completion of a scheduled jet flight from Seattle to the Far East, and on July 14, 1960, heard arguments on the motion for the preliminary injunction.

It appears from the pleadings that the collective bargaining agreements between the Airline and its pilots and flight engineers have expired. Both the pilots and engineers therefore assume the basic position "no contract—no work." They point out that all of the bargaining and mediation procedures and "cooling off" periods of the Railway Labor Act, 45 U.S.C.A. § 151 et seq., have been complied with, and such being the case, the Court is without authority to take any action here because of the Norris-LaGuardia Act provisions, 29 U.S.C.A. § 101 et seq., restricting the Federal Courts' power to issue injunctions in labor disputes.

The Airlines takes the position that, although collective bargaining agreements have expired, the dispute between the parties is still in the mediation stage due to later-submitted requests to the National Mediation Board for mediation assistance, that up to now the pilots and engineers have not bargained in good faith, and that, accordingly, under the principles expressed in American Airlines, Inc. v. Airline Pilots Ass'n, Intern., D.C.S.D.N.Y.1958, 169 F.Supp. 777, there has not been a compliance with the requirements of the Railway Labor Act, and hence that an injunction is proper.

The three-way dispute between the parties appears to be dominated by the basic issue as to the qualifications and number of men in the crew on the flight deck of pure jet aircraft now sought to be put into service by Northwest Airlines. The Flight Engineers, it appears, do not wish to be required to have pilot qualifications, while the Pilots want at least three men in the crew who are pilot-qualified. To satisfy both the Engineers and Pilots simultaneously would require a four-man crew consisting of three pilots and a flight engineer, but the Airline has made a managerial decision that it wants only two pilots and a pilot-qualified flight engineer, and argues that it is solely within management's province to determine this question. Defendants do not directly deny the propriety of the Airline, acting unilaterally, making this decision, but they insist that the effects of such a decision affect them, their rates of pay, working conditions, rules and allied matters, and accordingly assert the right to bargain for a contract governing such matters.

■■ The provisions of the Railway Labor Act, 45 U.S.C.A. § 151 et seq., govern the relationship between the parties. That law was amended in 1936 to include air carriers within its coverage, 45 U.S.C.A. §§ 151 et seq., 181–188, c. 166, 49 Stat. 1189. I am satisfied that, while agreement between the parties is not compulsory in the case of major disputes under the Railway Labor Act, certain steps are required to be taken, and if the parties refuse to follow the requirements of the law, injunctive relief is authorized. Brotherhood of R. R. Trainmen v. Chicago River & Indiana R. Co., 1956, 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622.

The compulsory procedures provided for by the Railway Labor Act are well summarized in American Airlines, Inc. v. Airline Pilots Ass'n Intern., supra, 169 F.Supp. at page 783, as follows:

"Disputes between carriers and employees are divided into (1) minor disputes involving grievances and other differences arising under existing collective bargaining agreements, and (2) major disputes concerning issues as to rates of pay, rules and working conditions which are involved in reaching collective bargaining agreements. There is no doubt that the dispute in this is a major dispute.

"The procedure of handling the two is quite different. In the case of minor disputes the first step is negotiation and conference between the parties. If, however, the parties are unable to agree disputes may be referred by either or both to an Adjustment Board which determines the dispute after hearing the parties, and the awards of which are final and binding upon both parties to the dispute. § 3. Brotherhood of R. R. Trainmen v. Chicago River & Indiana R. Co., 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622.

"In the case of major disputes, however, while the Act also sets up detailed procedures which the parties are required to follow, none of these result in any final or binding determination, and the parties are under no compulsion to reach agreement at any point.

"If either carrier or employees desire to make any change in the status quo with respect to conditions of employment, either under an existing collective bargaining agreement or in its absence, they must give 'at least thirty days' written notice of an intended change in agreements affecting rates of pay, rules, or working conditions'. § 6.

"Thereafter it is the duty of both parties under the mandate of Section 2 to confer and the Act directs that the time and place for the beginning of conference 'shall be agreed upon within ten days after the receipt of said notice, and said time shall be within the thirty days provided in the notice'. § 6.

"If the conferences fail either party may invoke the services of the Mediation Board which 'shall promptly put itself in communication with the parties' and 'shall use its best efforts, by mediation, to bring them to agreement'. If these efforts are unsuccessful the Board 'as its final required action' (except as to the request for a Presidential Emergency Board) 'shall at once endeavor * * * to induce the parties to submit their controversy to arbitration'. § 5, First. If both parties agree arbitration proceeds under § 7 and the resulting award is final and binding on the parties. If arbitration is refused, however, the Board 'shall' notify the parties that its mediatory efforts have failed and 'for thirty days thereafter, unless in the intervening period the parties agree to arbitration, or an emergency board shall be created under Section 10 of this Act, no change shall be made in the rates of pay, rules or working conditions or established practices in effect prior to the time the dispute arose'. § 5, First.

"Finally, after being notified by the Mediation Board that a dispute threatens 'substantially to interrupt interstate commerce to a degree such as to deprive any section of the country of essential transportation', the President may create a Board which 'shall investigate promptly the facts as to the dispute and make a report thereon to the President within thirty days from the date of its creation'. After the creation of the Board, and for thirty days after it has reported to the President 'no change, except by agreement, shall be made by the parties to the controversy in the conditions out of which the dispute arose'. § 10."

It is undisputed that the dispute here is a major one.

Although the plaintiff asserted in its pleadings the absence of good faith bargaining by the defendants, and hence a failure to comply with the required steps of the Railway Labor Act, it did not pursue such theory at the hearing on the motion for preliminary injunction. It refrained from doing so in the fear that the fact controversy which its efforts might generate would be antagonistic to eventual peaceful mediation or settlement of the dispute. The pilots, however, presented affidavits and attached

exhibits which on their face reflect evidence of a good faith compliance with the provisions of the Railway Labor Act. It would be superogatory to recite the steps taken. Suffice it to summarize that it is claimed in the pilots' affidavits that from July 25, 1959 to the present time, many conferences were held over several days at a time, faithfully attended by the pilots, who made every good faith effort to reach agreement.

I am therefore satisfied from the evidence presented, or from the lack of evidence made available, that the plaintiff has not discharged its burden of showing an absence of good faith on the part of either the pilots or the engineers to comply with the provisions of the Railway Labor Act.

The plaintiff also urges that, since the decision as to the exact complement on the flight deck of pure jet aircraft is exclusively a managerial one, the defendants are acting in bad faith in a legal sense by insisting on having some voice in determining the qualifications and number of personnel on the jet aircraft, and that a declaration by the Court that it is the exclusive province of management to determine this issue, is justified and would be beneficial in solving the issues between the parties.

But this argument, while ingenius and plausible, does not furnish sufficient justification for the issuance of an injunction where, as here, it does not affirmatively appear that provisions of the Act have not been satisfied. A naked declaration as to the rights of management to make management decisions would be a futile echo in solving the resulting practical problems which face the parties. At all events, the defendants do not dispute the basic concept that management is free to make its own decisions, but argue that they have a right to bargain collectively as to the results of management's decisions as they affect the defendants' jobs.

The plaintiff also urges that the provisions of the Railway Labor Act have not been satisfied because it recently served additional notices under Section 6 of the Railway Labor Act and sought to invoke further the services of the National Mediation Board. The plaintiff argues that the different issues therein raised have not been finally acted upon by the Board.

But this, it seems is an undue stretching of the terminology and purposes of the Act, for if what plaintiff urges were the law, it would be possible to continually forestall the rights of the parties to strike or to lockout by the mere filing of new Section 6 openers. As was said in American Airlines, Inc. v. Airline Pilots Ass'n Intern. case, supra:

> "Thus the right of the Union or the employer to use the economic pressures of strike or lockout which are forbidden only during a period when the parties have not fully performed their duties and obligations under the Act, could be postponed indefinitely." 169 F.Supp. at page 797.

No new issues of a different nature appear to be posed by the filing of the later Section 6 openers.

The plaintiff's motion for a preliminary injunction is denied; the engineers' motion to dismiss is denied, and the restraining order heretofore issued has been vacated.

The foregoing expressions shall constitute the Court's findings of fact and conclusions of law in compliance with F.R.Civ.P. 52, 28 U.S.C.A.