**INTERNATIONAL ASSOCIATION OF MACHINISTS, AFL–CIO, and its Northwest District Lodge No. 143, Plaintiff,**

v.

**NORTHWEST AIRLINES, INC., Defendant.**

**No. 4–61–Civ.–93.**

United States District Court
D. Minnesota,
Fourth Division.

May 6, 1961.

Louis P. Poulton, Washington, D. C., and Solly Robins, St. Paul, Minn., for plaintiff.

Henry Halladay, and Bernard G. Heinzen, Minneapolis, Minn., for defendant.

DEVITT, Chief Judge.

Plaintiff is a labor union representing airline flight engineers.

For decision here is plaintiff's motion for a preliminary injunction enjoining Northwest Airlines " * * * from refusing to assign flight engineers represented by the plaintiff to all aircraft owned and operated by the defendant which require the services of flight engineers, including DC–8s * * *." [1]

On February 24, 1961 the President of the United States created a Board under authority of the Railway Labor Act, 45 U.S.C.A. § 160, to investigate and report with respect to a labor-management dispute between the parties which, along with disputes on other airlines, had created an emergency of national import.

The last paragraph of Section 160, supra, reads:

"After the creation of such board and for thirty days after such board has made its report to the President, no change, except by agreement, shall be made by the parties to the controversy in the conditions out of which the dispute arose."

The plaintiff claims that this statute, and the Presidential Order employing substantially similar language, are violated by defendant's failure to assign flight engineers represented by it to serve on DC–8 jet aircraft.

The Railway Labor Act, originally enacted to govern labor-management relations in the railroad industry, was later made applicable to the air transport industry. 45 U.S.C.A. §§ 151 et seq., 181–188, c. 166, 49 Stat. 1189.

There are no judicial decisions construing Section 160, or legislative reports accompanying its enactment, which are helpful to us here in determining a more exact meaning or purpose of this provision other than that which may be gar-

nered from a reading of it. Examining the Section in the light of the whole scheme for insuring the greatest possible measure of labor-management concord as set up in the law, it appears obvious that the purpose of the provision was to require the contesting parties not to alter their previous relationship pending the report by the Presidential Board—or, to put it in another way, to maintain the status quo.

Although the exact status quo is not clearly discernible, it does not appear that, prior to the appointment of the Presidential Board on February 24, 1961, or even prior to the work termination by the flight engineers on October 10, 1960, the flight engineer members of plaintiff's Union were employed on DC–8 jet aircraft so as to require their status quo re-employment now within the meaning of Section 160. In fact, it does not appear that plaintiff's members were ever contractually employed on defendant's jet aircraft in the sense that their pay scale, qualifications and duties were determined. Plaintiff's members did serve on defendant's jets between July 23, 1960 and October 10, 1960. But this appears to have been a relationship by sufferance on each side during the time negotiations and mediation were being carried on.

. It should be pointed out that no issue is here raised as to the employment of plaintiff's members on all other Northwest aircraft. Plaintiff's flight engineers are manning such flights. They are working under a written agreement, which became effective on October 1, 1958, but that agreement did not cover flight engineers on jet aircraft, a type not then in use on defendant's line. The agreement recognized (in Section 1(d)) that plaintiff would be the bargaining representative for flight engineers on such aircraft and provided (in Section 30(o)) that the pay scale pertaining to service thereon was open for negotiation under the provisions of the Railway Labor Act.

[1]. This case was instituted in the District of Columbia and later transferred here under authority of 28 U.S.C.A. § 1404

(a). The District Judge there first granted, and later vacated, a temporary restraining order.

The parties never agreed on a pay scale for DC-8 service, notwithstanding much negotiation and mediation. In addition, there has been marked disagreement between the parties as to the qualifications and training of jet flight engineers. The defendant has made a managerial decision that the complement on the flight deck of DC-8 jet aircraft should consist of 2 pilots and 1 flight engineer with pilot training. In contemplation of the inauguration of the use of jet aircraft, the defendant offered to give flight training to the flight engineer members of plaintiff's Union while they were on a pay status. But for reasons of their own (one of them being that they would then lose their seniority as members of the Machinists Union and would be in an inferior relative position in the pilots roster), the plaintiff's members refused to accept such training. In one of the several recent actions in this District, the Court refused to enjoin the flight engineers from striking or refusing to accept this additional training. Northwest Airlines, Inc. v. International Ass'n of Machinists, D.C.D. Minn.1960, 185 F.Supp. 129.

The parties to this lawsuit have been at loggerheads for a long time, and their controversy is complicated by the demands of the pilots Union which insists that all members of the jet crew be pilots. Thus there is a three-cornered issue between the company, the pilots Union and the flight engineers Union as to the exact complement to be employed on jet aircraft. This is the real issue, of which the subject of present action is but a minor facet.

During the two-year history of this controversy, the parties have resorted to the Court on several occasions. Three of the decisions are reported. Northwest Airlines, Inc. v. International Ass'n of Machinists, D.C.D.Minn.1959, 178 F. Supp. 825; Northwest Airlines, Inc. v. Airline Pilots Ass'n, D.C.D.Minn.1960, 185 F.Supp. 77; Northwest Airlines, Inc. v. International Ass'n of Machinists, D.C. D.Minn.1960, 185 F.Supp. 129. The fact situation is more fully reflected in these reports.

The Court is of the view that the members of plaintiff's Union did not have a prior employment status with Northwest Airlines of the kind contemplated by the wording and apparent purpose of Section 160 of the Railway Labor Act so as to require Northwest to put plaintiff's members on as flight engineers on jet aircraft pending, and for 30 days after, the filing of the report of the Presidential Board. Absent the creation of the Presidential Board, the status of the parties was such that the Court could not have either required the flight engineers to work, or obligated the Airline to employ them. The creation of the Presidential Board did not create any different status or obligations. For the Court to grant the requested relief would, in effect, create a new status, and not reinstate a former one.

The motion for a temporary injunction is denied.